**Rodney Keith INGRAM,
Plaintiff–Appellant,**

v.

**AETNA CASUALTY AND SURETY COMPANY and Union Carbide Corporation, Defendants–Appellees.**

Supreme Court of Tennessee,
at Knoxville.

March 21, 1994.

Rehearing Denied May 2, 1994.

Michael Y. Rowland, Richard C. Bentley, Knoxville, for plaintiff-appellant.

Julia S. Howard, Knoxville, for defendants-appellees.

## OPINION

O'BRIEN, Justice.

Plaintiff, Rodney Keith Ingram appeals dismissal of his Workers' Compensation claim on defendants' motion for summary judgment in the trial court.

Between 1973 and 1979, while working for Union Carbide Corporation in Oak Ridge, Tennessee, appellant was exposed to asbestos insulation dust. As a result of this exposure Mr. Ingram was diagnosed by pulmonary specialist, Dr. Ronald Cherry, as suffering from an asbestos related disease referred to as "benign asbestos pleural plaques."

The parties have stipulated to expert medical evidence presented in form of an affidavit by Dr. Cherry in which he states that while Mr. Ingram is not presently disabled by his condition, he is at a substantially increased risk of developing pulmonary asbestosis, which is the scarring of lung tissue, and which frequently leads to impaired pulmonary functions. Dr. Cherry also states that Mr. Ingram's condition places him in more danger of developing lung cancer or malignant mesothelioma than individuals who have not contracted asbestos pleural plaques. By stipulating to the medical evidence in the affidavit, the parties have further agreed that it is impossible for the medical community to

predict when, if ever, the plaintiff will develop decreased pulmonary functions.

However, according to Dr. Cherry, the progressive nature of the condition with which Mr. Ingram has been diagnosed may result in any degree of disability, including death. Such disability, if it does occur, may take as long as twenty years to develop.

Since the medical community cannot predict when Mr. Ingram may become disabled, or to what extent, Dr. Cherry has advised that it is medically necessary for the plaintiff to be subjected to annual pulmonary examinations for the early detection of any developing malignant condition. Such examinations, according to the doctor's affidavit, are the best to be presently offered by medical science to monitor the health and detect early any malignant condition of someone in the early clinical stages of an asbestosis related disease as a preventive measure.

Despite the defendants' stipulation to the medical necessity for annual check-ups, they deny any liability for medical benefits or to pay for the plaintiff's yearly examinations.

The plaintiff claims a statutory right to medical benefits under the provisions of T.C.A. § 50–6–204(b). The plaintiff also sues to preserve his claim for future workers' compensation disability benefits. Alternatively, the defendants argue that where there is no proof of disability or incapacitation there can be no right to bring suit for any benefits.

■ As noted the trial court overruled plaintiffs motion for summary judgment and dismissed the suit as premature. We disagree and, for the following reasons, reverse on the issue of liability for medical expenses incurred as a result of the plaintiff's condition.

T.C.A. § 50–6–204(b) states in pertinent part:

Where the nature of the injury or occupational disease . . . is such that it does not disable the employee but reasonably requires medical, surgical or dental treatment or care, medicine, surgery and dental treatment, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus shall be furnished by the employer.

Considering the progressive nature of occupational diseases caused by exposure to asbestos, preventive medicine in the form of examinations designed to lead to early discovery and thus enabling early treatment, clearly falls within the term "reasonably required" medical care as contemplated in § 204(b).

Accordingly, we find that plaintiff is entitled to medical benefits, to be furnished by the employer, for the periodic evaluation of his pulmonary condition and any necessary subsequent treatment related to his occupational disease.

■ The plaintiff further requests that we order the case remanded and retired, with the provision that it be reinstated upon evidence that Mr. Ingram has developed a measurable disability, citing *Brown v. Consolidated Coal Company*, 224 Tenn. 144, 451 S.W.2d 684 (Tenn.1970), as precedent upon which we may base our order.

The defendants contend that a remand and retiring of the case, to be reinstated at such time that Mr. Ingram's disease becomes disabling, "carries with it a multitude of problems." The defendants cite primarily the judicial logistics of keeping the record inactive, yet still on file, and that a retired, although non-judicated case, requires an insurance company to carry a risk on its books. The defendants also contend that confusion of liability will arise if the employee should change jobs, or if the employer changes insurance carriers.

The possibility of future confusion of liability for Mr. Ingram's injury is remote. Issues of liability are often raised as a defense in injuries of this type and are often the subject of appeal. Such claims are subject to adjudication at the appropriate time.

There is no statutory or procedural prohibition to prevent Mr. Ingram from filing a claim for disability benefits if, and when, his condition advances to the point that some compensable degree of disability may be established. The one-year statutory limitation on an injury involving an occupational disease does not begin to run until "after the

beginning of the incapacity for work." T.C.A. § 50–6–306(a). We find that plaintiff's claim for disability benefits is not yet ripe for adjudication.

The trial judge in this case expressed considerable concern about the present efficacy of this Court's decision in *Brown v. Consolidated Coal Co.*, supra, upon which the plaintiff has relied seeking retirement of the case, after judgment for medical expenses, until such time as the plaintiff may possibly incur some compensable disability. He expressed the view in his findings of fact that it would be beneficial for this Court to provide some current guidance for the trial courts in those cases involving the problem of long-term related disease.

We disagree with the judgment dismissing plaintiff's action however, we are in accord that further explication is needed of the current state of the law involving adjudication of the rights of individuals affected with long-term latent disease. While the statutes across the spectrum of the states are generally similar in their basic structure, the case laws are somewhat in disarray. In our review of these various decisions we have concluded that the California Workers' Compensation Act is similar in substance to the Tennessee Act, insofar as the issues at hand are concerned. We have borrowed heavily from the California case of *J.T. Thorp, Inc., v. Workers' Compensation Appeals Board*, 153 Cal.App.3d 327, 200 Cal.Rptr. 219 (1984), in reaching the conclusions we have.

■ On the facts of this case, we note that neither of the parties in their stipulation or affidavits, indicated how Mr. Ingram first came under the observation of Dr. Cherry whose affidavit established Mr. Ingram's malady. It appears that Mr. Ingram was employed at the K–25 Plant in Oak Ridge, Tennessee by Union Carbide Corporation. Exhibit No. 2 to Dr. Cherry's affidavit sets out that on 19 November 1984 Mr. Ingram was referred from his work place for evaluation of an abnormal chest x-ray. It must be presumed the referral was in conjunction with some form of internal physical examina-

tion. The result of the examination was the description of Mr. Ingram's physical condition as set forth in the doctor's affidavit. We are satisfied that T.C.A. § 50–6–204(b), cited previously, and T.C.A. § 50–6–303(a)(2)[1] contemplate that an employee suffering from asbestos exposure in any of its manifestations is entitled to reimbursement for predisability medical expenses.

■ The foregoing Code Sections are word specific, and neither impose a requirement that the employee be disabled in order to qualify for medical treatment or benefits. While, at times, the terms compensation and benefit are used interchangeably in the Worker's Compensation Act, compensation generally applies to the monetary awards received by an injured employee while benefits refer to the employer's liability for medical and surgical services. Disability indemnities are intended primarily to substitute for the workers' lost wages in order to maintain a steady stream of income for the employee in the short haul, and on a long-term basis have the dual function to compensate both for actual incapacity to work and for physical impairment of the worker's body, which may or may not be incapacitating. In light of the different purposes underlying medical and disability indemnity it is clear there is no requirement in the Act that an employee be disabled in order to qualify for medical treatment benefits. *See Thorp*, supra, 200 Cal. Rptr. at p. 223.

■ Having reached this conclusion in regard to medical payments, which we think is entirely correct, we look to plaintiff's claim for disability benefits. Dr. Cherry found that Mr. Ingram suffered from an asbestos-related disease in its early clinical stages, which was not disabling at the time of his affidavit. He stated that annual, complete pulmonary examinations with chest x-rays, were in order. It is essential that the case remains open to provide this necessary medical treatment as services are rendered and secure payment of charges as they are incurred. In *Bazner v. American States In-*

1. T.C.A. § 50–6–303(a)(2): An employee who has an occupational disease shall be entitled to the same hospital, medical and miscellaneous benefits as an employee who has a compensable injury by accident, ...

*surance Co.,* 820 S.W.2d 742 (Tenn.1991), we held that an employee suffering from occupational disease or personal injury was entitled to benefits provided for in the Workers' Compensation Act, including, in appropriate cases, payment for future medical expenses incurred or necessary treatment for injury or disability. We suggested that the better practice would be that any application made for post-judgment medical expenses should be made by petition in the original action in order that the records of all proceedings in the cause were before the Court when such an award was requested. We held that the plaintiff was entitled to receive all appropriate future medical care and treatment necessary upon compliance with the procedures stated in the opinion. We consider those procedures applicable in this case. We do not see the necessity for retiring the case as directed in *Brown v. Consolidated Coal Co.,* supra, and we elect to let that case rest on the particular fact situation involved. On the other hand, in the light of the advancement in technology in record keeping in this modern age, we do not apprehend the problems which concerned the trial court in maintaining this case on the docket for the purpose of allowing a claim for disability compensation for occupational disease at some later time should the occasion arise.

The statute of limitations begins to run on a disability claim when the employee has knowledge, actual or constructive, that he has an occupational disease *which injuriously affects his capacity to work to a degree amounting to a compensable disability. Consolidated Coal Co. v. Pride,* 224 Tenn. 188, 452 S.W.2d 349, 353 (Tenn.1970). (Emphasis supplied). There is no good reason nor statutory authority why the issue should not be addressed when it is tendered so long as it comes within the limitations fixed by T.C.A. § 50-6-303.

The cause is remanded for a determination of medical benefits due to the plaintiff by the employer in accordance with this Opinion. Plaintiff's claim for disability benefits is reserved for submission in accordance with limitations affixed by statute. The costs of this appeal are taxed against the defendant.

REID, C.J., and DROWOTA and ANDERSON, JJ., concur.

DAUGHTREY, J., not participating.

*ORDER ON PETITION TO REHEAR*

Defendants have filed a dignified and appropriate petition for rehearing in which they aver that the Court's opinion overlooks, misapprehends and incorrectly states material facts established by the evidence.

Defendant's concern relates to the Court's reference to an affidavit by Dr. Ronald Cherry which was inadvertently omitted from the appellate record and subsequently included by stipulation.

The Court's judgment was based on the evidence contained in the record and the applicable Workers' Compensation Statutes and not the stipulation of the defendants to the accuracy of the contents of Dr. Cherry's affidavit.

The petition to rehear is denied.