

FILED
Oct 21, 2021
01:55 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Dan Cody ) | Docket No. 2020-02-0545 |
| ) | |
| v. ) | State File No. 13453-2020 |
| ) | |
| G.UB.MK Constructors, et al. ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | Heard September 28, 2021 |
| Compensation Claims ) | via Microsoft Teams |
| Brian K. Addington, Judge ) | |

---

### Affirmed and Remanded

---

The employee alleged he suffered an occupational disease due to workplace exposure to coal fly ash. Following unsuccessful mediation, the employer filed a motion to dismiss or, in the alternative, for summary judgment, alleging the employee "cannot establish that he has an occupational illness or disease." After a period of written discovery, the taking of an expert medical deposition, and several motion hearings, the trial court conducted a hearing on the employer's motion and requested supplemental briefs. Thereafter, the trial court denied the employer's motion for summary judgment, concluding the employer did not establish the insufficiency of the employee's proof as a matter of law and there were genuine issues of material fact precluding summary judgment. The employer has appealed. Upon careful consideration of the record, we affirm the trial court's order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge David F. Hensley and Judge Pele I. Godkin joined.

Karen G. Crutchfield and W. Tyler Chastain, Knoxville, Tennessee, for the employer-appellant, G.UB.MK Constructors

John Dupree and Jim K. Scott, Knoxville, Tennessee, for the employee-appellee, Dan Cody

### Factual and Procedural Background

Dan Cody ("Employee") has worked for G.UB.MK Constructors ("Employer") as a truck driver since October 2009. Part of his duties involved being at a worksite called

1

the Kingston Fly Ash Recovery Site.[1]  In February 2020, Employer filed a petition with the Bureau of Workers' Compensation noting that Employee was alleging an "occupational injury" due to exposure to "coal fly ash."[2]  Employer's petition listed a date of injury as June 27, 2019.  Employer asked for "dismissal of this claim without prejudice."  On August 19, 2020, when neither Employee nor his attorneys appeared for a second scheduling hearing, the trial court entered an order dismissing the claim without prejudice.  The following day, Employee filed a petition listing his date of injury as September 22, 2016, and alleging: (1) he suffered an occupational injury due to his alleged exposure to fly ash at work; (2) he had been placed at maximum medical improvement by a physician; and (3) he been given a permanent medical impairment rating by his physician.

Thereafter, a dispute certification notice was issued that listed multiple disputed issues, including the compensability of Employee's claim, his entitlement to medical benefits, and whether he is entitled to temporary or permanent disability benefits in the absence of any proof of a partial or total incapacity for work.  Employer then filed a motion to dismiss or, in the alternative, for summary judgment arguing, in part, that because Employee continued to work for Employer full time, he had not sustained a compensable injury as defined in Tennessee Code Annotated section 50-6-303(a)(1).

After the filing of Employer's motion to dismiss or for summary judgment, Employee filed a motion to amend his petition to specifically allege a "partial loss of the capacity to work."  The trial court granted Employee's motion to amend his petition and referred the case back to the Bureau's mediation program.  Following the issuance of a second dispute certification notice, Employer renewed its motion to dismiss or for summary judgment.

Following a period of discovery, including the deposition of Dr. Nicholas Xenopoulos, Employee filed responses to Employer's motion and its statement of undisputed facts.  Employer filed motions to exclude the "declarations and opinions" of the two medical experts upon which Employee relied, and Employee filed a motion to continue the hearing the court had set to address Employer's motion to dismiss or for summary judgment.  The trial court denied both motions.

During the telephonic hearing on Employer's motion to dismiss or for summary judgment, counsel for Employer asserted that because Employee continued to work for

---

[1] In December 2008, a dike surrounding an ash containment dewatering pond in Kingston, Tennessee failed, resulting in approximately 5.4 million cubic yards of coal ash being released.  *See* "EPA Response to Kingston TVA Coal Ash Spill," https://www.epa.gov/tn/epa-response-kingston-tva-coal-ash-spill (last visited Aug. 8, 2021).

[2] Coal ash, also called fly ash, is "a very fine powdery material composed mostly of silica made from the burning of finely ground coal in a boiler."  *See* "What is Coal Ash?" https://www.epa.gov/coalash/coal-ash-basics (last visited Oct. 18, 2021).

Employer full time with no restrictions, there had been no "injury" as that term is defined with respect to occupational diseases in Tennessee's Workers' Compensation Law. Counsel specifically asked the trial court to dismiss Employee's case "without prejudice on the grounds that [Employee] is still working full time." In response, Employee's counsel argued that Employee had alleged and properly reported an occupational disease caused by workplace exposure to fly ash, that Employer had not negated an essential element of Employee's claim, and that Employee is entitled to medical benefits under Tennessee's Workers' Compensation Law even if there is no evidence of a vocational disability. Employee's counsel further argued that Employee had missed time from work and was entitled to temporary total disability benefits. During rebuttal argument, Employer's counsel asserted Employer had negated an essential element of Employee's claim because Employee had not established a partial or total incapacity to work as required by Tennessee Code Annotated section 50-6-303(a)(1).

After the motion hearing, the trial court asked the parties to submit briefs addressing the Tennessee Supreme Court's decision in *Ingram v. Aetna Cas. & Sur. Co.*, 876 S.W.2d 91 (Tenn. 1994). Thereafter, the trial court issued an order denying Employer's motion for summary judgment. Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2020). The interpretation and application of statutes and rules are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). When evaluating a trial court's decision regarding a motion to dismiss filed pursuant to Tenn. R. Civ. P. 12.02(6), we must review the trial court's determination *de novo* and consider whether, assuming the truth of all averments in the petition, the employee can prove no set of facts that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999). Moreover, a trial court's ruling on a motion for summary judgment is reviewed *de novo* with no presumption of correctness. *Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 895 (Tenn. 2016) ("[W]e make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied."). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2020).

## Analysis

On appeal, Employer raises several issues that we have combined and restated as follows: (1) whether the trial court erred in finding that "Employee . . . has a compensable

occupational disease claim" pursuant to Tennessee law; and (2) whether the trial court erred in relying on the Tennessee Supreme Court's decision in *Ingram v. Aetna Cas. & Sur. Co.*

Additionally, there are two issues implicated by Employer's motion and the statutory language on which Employer has relied. First, Employer's motion necessitates a brief discussion of the standards of proof required for a motion to dismiss filed pursuant to Rule 12.02 of the Tennessee Rules of Civil Procedure as opposed to the standards of proof required for a motion for summary judgment filed pursuant to Rule 56 of the Tennessee Rules of Civil Procedure.

Second, we must address whether the phrase "shall be treated as the happening of an injury by accident" in Tennessee Code Annotated section 50-6-303(a)(1) was intended to prohibit an employee from seeking medical benefits for an alleged occupational disease in circumstances where there has been no "partial or total incapacity for work." If Employer's interpretation of section 50-6-303(a)(1) is correct, then no employee can be deemed to have suffered a compensable occupational disease as defined in Tennessee's Workers' Compensation Law until Employee shows a partial or total incapacity for work. This would, in effect, insulate employers from having to initiate medical benefits in any occupational disease claim until the employee has experienced such an incapacity for work. Employee argues Employer's interpretation is incorrect, adding that it would be unjust to excuse employers from providing medical benefits in occupational disease claims where the employee has not yet experienced a "partial or total incapacity to work" due to the alleged occupational disease.[3]

*Employer's Motion to Dismiss or for Summary Judgment*

In the first paragraph of its motion, Employer cited Rules 12 and 56 of the Tennessee Rules of Civil Procedure, as well as unspecified portions of Tennessee's Workers' Compensation Law. In essence, Employer argued in its motion that an employee cannot assert a claim for workers' compensation benefits arising from an alleged occupational disease until there has been a "partial or total incapacity for work" as stated in Tennessee Code Annotated section 50-6-303(a)(1) and, thus, the petition is subject to dismissal because it is, at best, prematurely filed. Section 303(a)(1) provides as follows:

---

[3] When the 2013 Workers' Compensation Reform Act was passed, section 50-6-301, which defined the term "occupational diseases," was eliminated, and section 50-6-102(14), which defines the word "injury," was amended to include occupational diseases. *See* Tenn. Code Ann. § 50-6-102(14) (2014). Thus, the reference in section 50-6-303(a)(1) to section 50-6-301 is problematic to the extent it references a statute that was deleted for all cases with dates of injury after July 1, 2014. *See* Tenn. Code Ann. § 50-6-101 ("the Workers' Compensation Law . . . shall be controlling . . . when the date of injury is on or after July 1, 2014"). We conclude, however, that other than the phrase "as defined in § 50-6-301," the remainder of section 50-6-303(a)(1) is applicable to cases in which the date of injury is on or after July 1, 2014.

When the employer and employee are subject to this chapter, the partial or total incapacity for work or the death of an employee resulting from an occupational disease as defined in § 50-6-301 shall be treated as the happening of an injury by accident or death by accident, and the employee, or in case of the employee's death, the employee's dependents, shall be entitled to compensation as provided in this chapter.

Tenn. Code Ann. § 50-6-303(a)(1).

A motion to dismiss for failure to state a claim upon which relief can be granted is used by defendants to test the sufficiency of the allegations in a petition, not the strength of a petitioner's proof. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714 (Tenn. 1997). A defendant who files a motion to dismiss in these circumstances "admits the truth of all the relevant and material allegations . . . but asserts these allegations fail to establish a cause of action." *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010). The Tennessee Supreme Court has addressed motions to dismiss filed pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure:

In considering a motion to dismiss, courts must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. A trial court should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. We review the trial court's legal conclusions regarding the adequacy of the complaint *de novo*.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (internal quotations and citations omitted).

A motion for summary judgment, on the other hand, should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The burden is on the party pursuing summary judgment to demonstrate both that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). If the moving party makes a properly supported motion, the burden of production then shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact at the summary judgment stage. *Rye v. Women's Care Ctr. of Memphis, PLLC*, 477 S.W.3d 235, 265 (Tenn. 2015). Furthermore, "[a] fact is material 'if it must be decided in order to resolve the substantive claim or defense at which the motion is directed.'" *Akers v. Heritage Med. Assocs., P.C.*, No. M2017-02470-COA-R3-CV, 2019 Tenn. App. LEXIS 5, at *14 (Tenn. Ct. App. Jan. 4, 2019) (quoting *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). "A

'genuine issue' exists if 'a reasonable [factfinder] could legitimately resolve that fact in favor of one side or the other.'" *Akers*, 2019 Tenn. App. LEXIS 5, at \*15 (quoting *Byrd*, 847 S.W.2d at 215).

In the present case, Employer asked the trial court during the motion hearing to dismiss Employee's petition "without prejudice on the grounds that [Employee] is still working full time." Later during the hearing, Employer asserted it had negated an essential element of Employee's claim because Employee "continues to work without restrictions." Hence, we interpret Employer's motion and its arguments during the motion hearing to request either dismissal of Employee's claim pursuant to Rule 12.02 or summary judgment pursuant to Rule 56. We conclude Employer is entitled to neither.

With respect to the motion to dismiss, Employer's argument hinges on its interpretation of Tennessee Code Annotated section 50-6-303(a)(1) and its assertion that an occupational disease claim has not accrued until there has been a partial or total incapacity for work. However, in the present case, Employee filed a motion to amend his petition to allege he had "sustained a partial loss of the capacity to work." The trial court granted that motion. Hence, the allegations of Employee's amended petition include a claim that there has been partial incapacity to work as contemplated in section 303(a)(1). Assuming that allegation to be true, as we are required to do in the context of Employer's motion to dismiss, it is clear Employee has stated a cause of action, and Employer is not entitled to dismissal of the claim pursuant to Rule 12.02.

With respect to Employer's motion for summary judgment, the trial court concluded there were genuine issues of material fact concerning whether Employee has established a compensable occupational disease through expert medical proof and whether Employee has sustained a permanent vocational disability. As a result, it denied Employer's motion. We conclude, on the other hand, that Employer failed to either negate an essential element of Employer's claim or establish as a matter of law that Employee's proof is insufficient to support a claim. Thus, in our view, Employer did not meet its initial burden of production under Rule 56 and, as a result, there was no shifting of the burden to Employee to show genuine issues of material fact.

Moreover, even if the burden of production had shifted under Rule 56, we agree with the trial court that Employee came forward with sufficient evidence to create one or more genuine issues of material fact. Dr. Nicholas Xenopoulos, an interventional cardiologist, offered a Rule 72 Declaration in which he stated that "it is more probable than not that [Employee's] exposure to coal fly ash during his employment in the Kingston ash spill cleanup was a substantial contributing cause of or substantially contributed to the aggravation of his coronary artery disease." In his Rule 72 Declaration, Dr. Theron Blickenstaff, board certified in occupational medicine, opined that "it is more probable than not that [Employee's] exposure to coal fly ash during his employment in the Kingston ash spill cleanup was a substantial contributing cause of or substantially contributed to the

6

aggravation of" both the coronary artery disease and hypertension.[4]  In short, the declarations of Dr. Xenopoulos and Dr. Blickenstaff create genuine issues of material fact as to whether workplace exposure to fly ash primarily caused, materially advanced, or permanently aggravated Employee's medical conditions.

*Applicability of Supreme Court Precedent*

Next, Employer argues the trial court erred in relying on the Tennessee Supreme Court's opinion in *Ingram v. Aetna Casualty & Surety Co.*, 876 S.W.2d 91 (Tenn. 1994). In that case, the employee alleged he developed an occupational disease due to workplace exposure to asbestos-containing products.  *Id.* at 92.  He had been diagnosed by a pulmonologist with "benign asbestos pleural plaques."  *Id.*  The parties stipulated that the employee was "not presently disabled" due to his condition, and the medical experts were unable to state with any degree of medical certainty if and when the employee would develop pulmonary dysfunction due to the occupational exposures.  *Id.* at 92-93.  The employee asked the court to order the employer to provide periodic pulmonary examinations, but the employer denied any liability for medical benefits and asserted the employee's claim was premature.  *Id.* at 93.  In rejecting the employer's argument in *Ingram*, the Supreme Court explained:

> [W]e find that [the employee] is entitled to medical benefits, to be furnished by the employer, for the periodic evaluation of his pulmonary condition and any necessary subsequent treatment related to his occupational disease.
>
>  . . . .
>
> There is no statutory or procedural prohibition to prevent [the employee] from filing a claim for disability benefits if, and when, his condition advances to the point that some compensable degree of disability may be established. The one-year statute of limitation on an injury involving an occupational disease does not begin to run until "after the beginning of the incapacity for work."  We find the plaintiff's claim for disability benefits is not yet ripe for adjudication.

*Id.* at 93-94 (internal citation omitted).

We have previously concluded that "[r]eliance on precedent from the Tennessee Supreme Court is appropriate unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or

---

[4] We offer no opinion as to whether these statements, standing alone, are sufficient to meet Employee's burden of proof at trial.

7

that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). The language in section 50-6-303(a)(1) on which Employer relies is the same in all pertinent respects as the language on which the Tennessee Supreme Court relied in *Ingram*.[5] During oral argument, Employer argued that, because pre-reform law contained a specific section defining how to establish a causal link between workplace exposures and a disease, and that section was removed as a result of the 2013 Workers' Compensation Reform Act, case law decided prior to the Reform Act must be disregarded. We disagree for several reasons.

First, there is nothing in the language of *Ingram* to suggest the Supreme Court relied on a remedial interpretation of the pre-reform law in interpreting the pertinent language in section 50-6-303(a)(1). Second, the Court in *Ingram* did not rely on section 50-6-301, which was removed by the Reform Act, in reaching its conclusion. Third, the legislature has not altered the relevant language in section 50-6-303(a)(1) since *Ingram* was decided. Thus, we conclude the Supreme Court's holding in *Ingram* remains viable after the passage of the Reform Act. In circumstances where an employee asserts that he or she suffers from an occupational disease due to workplace exposures and requests medical care from the employer, the employer is obligated pursuant to Tennessee Code Annotated sections 50-6-204(a)(1)(A) and 50-6-204(a)(3)(i), as well as Tenn. Comp. R. & Regs. 0800-02-01-.06(1), to provide the employee a panel of physicians unless it asserts an affirmative defense it believes obviates the obligation to provide a panel.[6] If the employer elects to deny the claim and declines to provide a panel, the employee can file an appropriate petition for benefits seeking an order for the initiation of medical benefits. In such circumstances, in accordance with the Supreme Court's opinion in *Ingram*, the employee's claim for temporary or permanent disability benefits accrues upon "the partial or total incapacity for work or the death of an employee" as stated in section 50-6-303(a)(1).[7]

---

[5] The 1993 version of the Workers' Compensation Law, in place when *Ingram* was decided, also provided that "the partial or total incapacity for work or the death of an employee resulting from an occupational disease as herein defined *shall be treated as the happening of an injury by accident* or death by accident." Tenn. Code Ann. § 50-6-303(a)(1) (1993) (emphasis added).

[6] An employer can assert defenses to such a claim and decline to provide a panel, but it bears the risks associated with such a denial. *See, e.g.*, *Young v. Young Electric Co.*, No. 2015-06-0860, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *16 (Tenn. Workers' Comp. App. Bd. May 25, 2016) ("In circumstances where an employer refuses to provide medical treatment and/or denies the employee's claim, such employer bears the risk of being held responsible for medical expenses incurred by the employee in the event the claim is deemed compensable.").

[7] Tenn. Comp. R. & Regs. 0800-02-01-.06(1) states: "Following receipt of notice of a workplace injury and the employee expressing a need for medical care, the employer shall, as soon as practicable but no later than three (3) business days after receipt of such request, provide the employee a panel of physicians as prescribed in [Tenn. Code Ann.] § 50-6-204."

Finally, Employer cites several more recent cases, including *Shuler v. Eastman Chemical Co.*, No. E2016-02292-SC-R3-WC, 2017 Tenn. LEXIS 721 (Tenn. Workers' Comp. Panel Nov. 17, 2017) and *Lively ex rel. Lively v. Union Carbide Corp.*, E2012-02136-WC-R3-WC, 2013 Tenn. LEXIS 642 (Tenn. Workers' Comp. Panel Aug. 13, 2013) in support of its argument that an employee's claim based on an occupational disease cannot result in an award of any workers' compensation benefits until the beginning of a partial or total incapacity to work. In *Shuler*, the issue was whether the employee's claim arose prior or subsequent to the effective date of the 2013 Workers' Compensation Reform Act. The employee had retired in 1999 but was not diagnosed with bladder cancer until December 2015. *Id.* at *2. In analyzing this case, the Supreme Court's Special Workers' Compensation Appeals Panel framed the issue as when the statute of limitations began to run, not when the employee became eligible for medical benefits. *Id.* at *8.

In *Lively*, the issue before the court was how to identify a date of injury in a case where the employee first becomes disabled from working due to an occupational disease, then later died as a result of that occupational disease. *Id.* at *17-18. Significantly, the court identified different potential dates of injury depending on the circumstances of the case. For example, according to the Appeals Panel in *Lively*, "if an employee becomes partially or totally unable to work as a result of an occupational disease that later results in his or her death, then the employee's death cannot provide a new and separate date of injury." *Id.* at *18. However, if an employee never becomes partially or totally disabled from working due to the occupational disease but later dies from that disease, "the date of injury must be the date of death." *Id.* at *19.

We conclude the Tennessee Supreme Court took a similar approach in *Ingram* that requires a trial court to consider the particular facts and circumstances of a case. If an employee alleges he or she suffers from an occupational disease, that employee may be entitled to medical benefits pursuant to Tennessee Code Annotated section 50-6-204(a)(1) if that employee comes forward with sufficient proof from which the trial court can conclude he or she is likely to prevail at a hearing on the merits in establishing the existence of an occupational disease in accordance with Tennessee Code Annotated section 50-6-102(14). However, as provided in Tennessee Code Annotated section 50-6-303(a)(1), the employee's claim for disability benefits may not be "ripe for adjudication," *Ingram*, 876 S.W.2d at 94, but must be brought within the applicable limitation period after the "partial or total incapacity for work." *See* Tenn. Code Ann. § 50-6-303(a)(1).

Moreover, the court in *Ingram* noted that the provisions of Tennessee Code Annotated section 50-6-303(a)(2) are also relevant. That section, unchanged since *Ingram* was decided, states that an employee with an occupational disease "shall be entitled to the same hospital, medical and miscellaneous benefits as an employee who has a compensable injury by accident." Tenn. Code Ann. § 50-6-303(a)(2). The Court in *Ingram* concluded this section does not "impose a requirement that the employee be disabled in order to qualify for medical treatment or benefits." *Ingram*, 876 S.W.2d at 94.

9

In sum, Employer did not establish a basis for dismissal of this claim pursuant to Rule 12.02 of the Tennessee Rules of Civil Procedure, and it did not meet its burden of production pursuant to Rule 56 of the Tennessee Rules of Civil Procedure. Moreover, even if Employer had met its burden of production under Rule 56, we agree with the trial court that Employee came forward with sufficient proof to create one or more genuine issues of material fact for trial. Finally, Employer's assertion in its brief that the trial court "erred as a matter of law in finding that [Employee] . . . has a compensable occupational disease claim" is inapposite, as the trial court made no such finding. Instead, it concluded only that there were genuine issues of material fact that precluded summary judgment.

## Conclusion

For the foregoing reasons, we affirm the trial court's order and remand the case. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Dan Cody | ) | Docket No. 2020-02-0545 |
| | ) | |
| v. | ) | State File No. 13453-2020 |
| | ) | |
| G.UB.MK Constructors, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard September 28, 2021 |
| Compensation Claims | ) | via Microsoft Teams |
| Brian K. Addington, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 21st day of October, 2021.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Karen G. Crutchfield<br>Tyler Chastain | | | | X | kcrutchfield@bsmlaw.com<br>wtylerc@bsmlaw.com |
| John Dupree<br>Jim Scott | | | | X | johnbdupree14@gmail.com<br>jimscott264@gmail.com |
| Brian K. Addington, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov